Our next case of the morning is case 118652, James R. Stevens et al. v. McGuire Woods LLP. Are you ready to proceed? Yes, Your Honor. We're you ready? I am, Your Honor. Proceed. Good morning, Your Honor. Good morning. Madam Chief Justice, and may it please the Court, my name is David Giles, and I represent McGuire Woods in this case. Members of the Court, summary judgment was properly entered in this professional liability matter against McGuire Woods by the circuit court because the plaintiffs here are seeking to recover damages that they never suffered on claims that they never owned. The appellate court's decision in this case effectively creates a new cause of action through which former shareholders of a limited liability company can sue directly for a loss of the company's derivative claims. They can't under Illinois law. Under Illinois law, only current shareholders can sue derivatively, not directly, for a loss of derivative claims. And there was no reason to change established Illinois law in this case. The plaintiffs here could have sued McGuire Woods derivatively on behalf of the company to remedy the company's injuries had they not sold their interest in the company before this case started, had they not voluntarily relinquished their right to bring derivative claims. There was that right. Alternatively, the company itself could have sued McGuire Woods to recover for its own injuries, or the company's current shareholders could have sued McGuire Woods on behalf of the company to recover for the company's injuries. What could not happen, however, is for former shareholders with no interest in the company to bring a direct action for their own personal benefit to recover for the company's injuries. Absolutely. You devote most of your brief to what you're talking about here, I think, which really goes to the issue of damages, right? Whether these plaintiffs suffered any damages in their individual capacities with respect to the derivative claims against them. That's exactly right, Your Honor. Is there a standing problem here as well? If these plaintiffs are proceeding solely in their individual capacities and they no longer have any ownership interest in Beeland, what standing do they have to pursue a legal malpractice claim related to the handling of derivative claims that belong to Beeland? That's exactly right, Your Honor. We have described it in terms of a damages problem, but I think what you've just identified, Justice Thomas, are two sides of the same coin. The bottom line here is these plaintiffs have not been injured. They cannot bring an individual capacity action. They have no standing, to use your words, Your Honor, to bring an individual capacity action to recover for another party's damages. That's what they're seeking to do, and that's what the appellate court's decision in this case authorizes. And that's the fundamental problem with the case, is that they do not have the ability to recover on behalf of the company. And they couldn't recover on behalf of the company in the underlying case. And as you noted, Justice Thomas, and we put this out in the briefs, but that rule is clear. The Limited Liability Act of 1994 is clear on this point. Section 40-1, Section 40-15. They say that in a derivative, that statute says that in a derivative action, the recovery goes to the company. It does not go to the nominal parties, the plaintiffs in this case, who are bringing the claims. And that's consistent with 100 years of case law. That's consistent with how derivative claims are handled under the Business Corporations Act. And there is no case to the contrary. The only case that they've cited, the plaintiffs have cited in their briefs, is the 1897 decision, Brown v. DeYoung. And as we explain in our reply, that case is a direct action case. It's not applicable to these facts. And indeed, in that case, the company itself, which is the interested party here, the company itself had disclaimed any right of recovery. So Brown v. DeYoung does not change the rule under the LLC Act and all of the other cases that we cited. And the result is, because recoveries on derivative claims go to the company, these individual plaintiffs suffered no injury. They had no damages through the loss of these alleged derivative claims. And without an injury, there cannot be any liability. The plaintiffs spent an enormous amount of time in their briefs focusing on the existence of an alleged attorney-client relationship between McGuire-Woods and themselves. And while there was an attorney-client relationship for specific purposes, not for the specific purpose of suing Sidley Austin, but while there was such a relationship, that fact does not show that there were damages. It's a black-letter tort rule that breach of duty alone does not give rise to a cause of action. And that is the approach that the plaintiffs would have this court take in this case. They would have this court look at the fact that there was an attorney-client relationship by itself and hold that that, in and of itself, is sufficient to establish a claim. That is not the law. So what is the plaintiff's response besides this focus on the attorney-client relationship? Their other argument is, they say, well, we were injured because we were entitled to receive an indirect benefit through the increasing value that we would have realized in the price of our shares if derivative claims in the underlying case had been successful. That's not actionable either. It's not actionable because an indirect benefit of increased share price, by definition, means that the real injury is to the company. The direct harm is to the company. The indirect harm is to the shareholder. And in every case, the court has said, that indirect harm isn't actionable. The real party in interest is the company. And that's the point that the first district made in the Sterling Radio case, which is a case that involves both derivative and direct claims in connection with a loss that was a personal loss on a guarantee and that was a company loss as to a $300,000 judgment. And what the first district correctly held in that case, and we believe is the same analysis that should apply in this case, is that there has to be a strict focus on whether claims are derivative or direct. And if you apply that strict focus, the result is that the only injury being complained about here is a derivative injury, which is an injury to the company and is not actionable in an individual suit by the plaintiffs. And the reason it's not actionable, and the plaintiffs don't address this enough, is because otherwise these plaintiffs will put themselves in a dramatically better position than they ever would have been had they been successful in the underlying case. This court's cases from Eastman, Northern Illinois Physicians, Powell, they all say, and Sterling Radio reiterates, that you cannot be in a better position as a result of bringing a malpractice case against your lawyer than you would have been in had you succeeded in the underlying case that you claim the lawyer made an error in. That's a basic rule of damages in Illinois legal malpractice law. And their approach in this case would violate that rule, because they, individually, these plaintiffs, could not have recovered anything for themselves in the underlying case. Any recovery would have gone to Belin. But now they are before this court, as former shareholders of this company, having had no interest in the company when they brought this case, trying to sue McGuire Woods for upwards of $10 million for losing claims that belonged to the company, money that they would never have recovered personally in the underlying case. It's that problem, that unfairness, that is the reason that the appellate court's decision is incorrect in our judgment, and that the circuit court properly entered the summary judgment. If there are no other questions, thank you. Thank you. I'm sorry, I didn't hear you. Bob Cummings for the Stevens Plaintiffs and the appellate. And I'm joined by Mr. Thomas, Mr. Zeller. Judge Thomas, the first question you asked... Before we get into that question, Mr. Cummings, you're somewhat at a disadvantage, because I've looked at the briefs, and you didn't sign the briefs. You're arguing it. But I do have to ask you about a statement made at the conclusion of those briefs. Yes, sir. I found it to be particularly inflammatory. And at the conclusion of the brief, again, that you did not sign, there was a hypothetical that was set forth that said, quote, squarely aligns with the issues in this case, as advanced by opposing counsel, who just argued. The brief then asserts, quote, if the law supposes that, the law is an ass or an idiot. Yes. Although put in the context of Mr. Bumble and the literary reference and everything else, it seems particularly insulting and disrespectful. We have tough cases that's come before us that both sides vehemently disagree. I don't know that I've, well, in fact, I do know, I've never seen a brief where an attorney suggests that only an ass or an idiot could take the position advanced by the other side. And I think probably the most important question when you see something like that is, if this court actually agrees with opposing counsel's position in this case, does that make us asses and idiots as well? And that's the problem with acute reference. So, again, you're at a severe disadvantage. You didn't say it. I'm sure the message will get back to the author of it. But just your thoughts on that. My name's on that brief. I'm as responsible as anybody for that statement. It's presented in a literary context. But you reach a point that is extremely relevant here. McGuire Woods is taking the position in this case that although it was hired to represent these clients zealously, and although they told these clients, you have both individual and fiduciary claims, and although they brought individual and fiduciary claims for breach of contract, for fraud, for unjust enrichment, they intentionally and woefully failed to join Sidley and Austin as a defendant in those actions. They represented things that are clear violations of their fiduciary duty, and now that they're a defendant, they take the position that although they received hundreds of thousands of dollars in fees, and although now they're saying they're entitled to even more money, we ought to ignore their failure, we ought to ignore their failure to act. Now, that is at least a hypocritical position. And so while the literary reference may have struck you as inappropriate, and I'll apologize for that if it's interpreted in that fashion, the fact of the matter is, Judge, the position McGuire Woods takes here is an affront to the profession that we love. And I'll tell you why, if I may. Let me ask you a question on the merits then. Sure. Assume that McGuire Woods had brought the derivative claim against Sidley. Yes, sir. And they did it in a timely manner. Yes, sir. And that the trial court entered a $10 million judgment against Sidley on that claim. Yes, sir. How much of that $10 million judgment would have been awarded to your clients personally in their individual capacities? Isn't the answer zero? No, sir. It's not zero. And this Supreme Court, a case that they think so little of, the Brown case, tells us the answer to that. In fact, what the Brown case says that in a circumstance like we have here, precisely like we have here, we have minority shareholders, we have a majority shareholder and member managers and the law firm who engaged in illegal conduct to deprive the entity of serious assets in a circumstance such as this. The Illinois Supreme Court, yeah, it was a long time ago, said that there's an exception here where the individuals should be able to benefit because to give the money to the entity in that circumstance would benefit the wrongdoer. And that case, quite frankly, predicted what was to come. It predicted what was to come because in the principles of corporate governance, Rule 7.01D, the following is stated. In the case of a closely held corporation, the court in its discretion, as the Supreme Court did back in 1897, may treat an action raising derivative claims as a direct action and exempt from it the restrictions typically that are obtained in derivative litigation, as long as third-party interests aren't compromised. And there were no third-party interests to be compromised here. And as long as there's not going to be a multiplicity of suits, and that's not going to happen here. So we would and we will, if the court agrees with us and agrees with the appellate court, which we believe got it right, we're only asking for a trial. We're only asking to have an opportunity to prove that McGuire Woods, in failing to sue Sidley and Austin, breached a fiduciary duty, but worse. Before you get into worse, I have this right. Your clients no longer have any ownership interest in BLM. The claims rose before they got rid of their interest. But at this time, they don't have any interest in BLM. That's a fact, isn't it? They have no interest in that. But when we prove the case within the case, the fact that they have no interest in BLM, what possible interest do they have in determining whether McGuire Woods  That's the point, Justice Thomas. That's the point of 701D. In that circumstance, the case within the case that we'll try, these claims against McGuire Woods, McGuire Woods didn't represent BLM. They represented us. They said they would bring derivative actions. Our clients relied on that. As a matter of fact, in the record, there's a memorandum of October 2006, and here's what's going on. McGuire Woods wants to get a war test to bring an action against Mr. Rogers and the managing members, and, of course, knowing that Sidley and Austin is also a putative defendant, which they never sue, and abandon the claim, intentionally abandon it, say it would have made the case too hard. In the inducement to our clients to join in this litigation, they described the derivative claims as follows. These are their words. Certain claims in the lawsuit will be derivative in nature. This means that those claims we will be suing on behalf of BLM as a whole. We will argue that the defendant's wrongs harmed BLM as a whole, and that BLM as a whole should be compensated for those wrongs. For those claims, all minority shareholders, both those who have joined in the lawsuit and those who have not, will share in any recovery on a pro rata basis. So they've already told the client how they're going to recover in the derivative context. In other words, they basically were saying we'll try to get you a recovery like 7.01D provides. That was one representation. Their representative witness, Mr. Lieber, Justice Thomas, he testified that, yeah, we were going to bring these derivative actions because those derivative actions would bring a benefit to Mr. Stevens and the other minority shareholders. These people should be stopped at this point from trying to argue that there was no damage here. I mean, they got paid $300,000 for doing nothing, and now they have, and maybe this is what prompts the kind of quote that was at the end of this, in my judgment respectfully, the hypocrisy, to say that we fail, we admit, and it may not be out of their mouths, but it's out of their actions, we admit that we breached a fiduciary duty, but so what? We want more money. That should shock not only our profession, but the public as well. Sidley and Austin, you'll appreciate this. These people, McGuire Woods, when they brought this lawsuit, they knew that Rogers had taken the minority shareholder's one arm, and that Price and Goodwin had taken the shareholder's other arm, and that Sidley and Austin threw the punch, and they did nothing about it except disqualify Sidley. You ask me how will my folks recover? All I'm asking for is a trial. We should be entitled to a trial. That's all the appellate court said. Nothing in the circuit court of Cook County has any bearing on the viability of derivative claims against Sidley and Austin. What specific damages are your plaintiffs claiming? Well, Your Honor, obviously we want to get the hundreds of thousands of dollars back that we paid these folks for admittedly not suing Sidley and Austin. That's number one. Number two, we will prove that the loss of the ‑‑ by the way, Your Honor, to make this clear to you in terms of the potential damages, Sidley and Austin should have been sued for aiding and abetting unjust enrichment, breaching fiduciary duty, misappropriation of assets, and those assets, by the way, were hundreds of millions of dollars of assets, and fraud. Sidley and Austin aided and abetted, as in the Thornton case, another of my cases, against Jenner and Block. Sidley and Austin aided and abetted these serious violations, and we will, when we try the case, articulate a damage theory. So your damages include the attorney's fees, is that right? The actual damages. They certainly include the hundreds of thousands we paid these folks for admittedly doing nothing. Would you still have damages if they still had an interest in Beelin? I think the interest, whether they have an interest in Beelin today or before, is sort of a red herring. The claims against, these are claims, we're suing McGuire Woods for failing to fulfill their fiduciary duties to our clients. We have proved the case within the case, and we all know that's a hypothetical process. But our claims arose before we got rid of those interests, and I don't think that that in any way is an impediment to our successfully proving a case against McGuire Woods for failing to sue Sidley and Austin. So the claims are really not derivative claims, is that right? Well, that's the point, I think, of 701D. The whole article, in fact, what they did in their presentation of the law was to tell you half the story. They cited DeVore's case and they cited Judge Easterbrook's opinion in that Seventh Circuit case, and they cited a case from Missouri. But they didn't tell you what those cases really said. What those cases really said was, our case is different, and those cases did not trump and did not change what the Illinois Supreme Court said in 1897. And to that point, a Kent Law Review article tells us the following. Of importance to the Illinois practitioner, and this is on the issue of direct and indirect. Of importance to the Illinois practitioners, the fact that the law in the state is far from well settled. In Brown v. DeYoung, our case and this case, the court treated the misappropriated money as a fund out of which dividends should be declared and awarded the innocent shareholders their proportionate share of the amount due to the corporation. So we'll get a proportionate share under this reading of Brown. Then they cite these other cases, and they cite Vorey's, and they say, in Vorey's the court refused to follow the rule. That's the case they cite, and they say that's why Brown doesn't apply any longer. Except what they don't tell you is, it's different. In Vorey's, and in the Easterbrook case, and in the Missouri case, there were third-party interests that could have been affected. In Brown, in the case we cite, there were no third-party interests. In our case, there is no third-party interest. Mr. Cummings, can you answer the question directly? Yes. The suit within the suit, is it a derivative or is it individual? The claims that we will have to prove in the underlying case will be derivative claims against Sidley and Austin, and then we will be able to present to that court, acting as a court of equity, like this court acts as a court of equity, and say that under the Brown case and under 7.01D, we should be able to share from those proceeds. The response is twofold, I mean, a number of things. One, that DeYoung was never cited before until this brief in this court, and two, that DeYoung is not a derivative action. So why is it relevant here? It's relevant because the concept, the DeYoung case is cited in the context of cases that deal with actions by shareholders, whether the personal recovery is appropriate. And the Brown case is one of those cases, Your Honor. To say it's not a derivative case. That begs a question, Mr. Cummings, and I asked it to opposing counsel as well because I don't see where in the brief standing is considered. But now that you indicated it's a derivative suit, now that plaintiffs no longer have any ownership stake in Beeland, they did it one time, they don't now. That's true. What possible interest do they have in determining whether McGuire Woods handled the derivative claims properly, as those claims belong entirely and exclusively to Beeland? Well, because this is a malpractice case. The underlying case is one. We know that. Trying the case within the case, in many sense, becomes rather hypothetical. What we will do is who would have gotten the money under 701D or under Brown? It would have been the minority shareholders. We represent the minority shareholders. Since they have no interest, do they have even any standing to raise that claim? They have a position based upon the fact that the claims that we're asserting arose while they still owned their interest. I mean, if it were the case that we can't sue McGuire Woods, we're suing McGuire Woods. We're suing McGuire Woods for causing us injury. And the injury is what? The injury is what we would have obtained in the case within the case. It's not – are we to say now that back in 2006 and 2007, when they were being told that they get a recovery in a derivative action, that we can't proceed? We have to assume, and I think it's fair to assume, when we try this underlying case, we will be standing as we did then with our interest in Beeland. Thank you, Counsel. Counsel, your time has expired. Members of the Court, a couple of points. Number one, in terms of your question, what damages were claimed? Counsel gave you one answer, which was fees. That has never been raised. You moved for someone's judgment on the issue of damages because you don't have any evidence of damages. They've never argued, presented any evidence, given an affidavit, or even presented a theory in terms of fees. And, indeed, that wouldn't make any sense in a case like this. Fees are awarded in legal malpractice cases. In the case of Sorensen, I was the first to visit, and I don't seem to be mistaken. Fees are awarded where the fees are a natural and probable consequence of legal malpractice. Here, this is the case where they allege claims weren't brought. There were no fees incurred that were a natural and probable consequence of not bringing a claim. In any way, the issue wouldn't. So the only question before this court is, can the claimant recover damages for the loss of the derivative? Can they show that they individually suffered any harm? And they can't, in a sense. What Barnett's counsel has relied on in DeYoung and then in what he calls 701D, which is the American Law Institute's Principles for Corporate Governance, which is from 1973, and is just that, a statement by the ALI as to some recommendations in terms of what the law might be. And the problem with relying on that, and what his characterization of DeYoung is. Now, as we said, DeYoung's irrelevant. The direct action case, the company in that case, didn't want the money back. It was inapplicable. But even if you looked at DeYoung and said, yeah, DeYoung is just like what the ALI said 80 years later, that's not illegal at all. The ALI doesn't say we're illegal at all. There's a statute. The legislature addressed this point 20 years later in the LLC Act. And the LLC Act says a limited liability company, when you bring derivative claims on behalf of a limited liability company, the trial court shall remit the proceeds to the company. It doesn't say anything about that. We need to provide for a remedy to give the money directly to the shareholders. And there's absolutely a risk of multiplicity of litigation here, even if this were relevant at the time. Because, just to take an example, the second largest minority shareholder, a man by the name of John King, sued in the underlying case, tried to bring these claims to the city. He hasn't joined this lawsuit. He hasn't tried to sue McGuire-Wood. What about him? He could bring another action against McGuire-Wood. In other words, there are a bunch of shareholders who could bring this type of claim against the lawyers where you try to recover for a loss of derivative claim on the theory that you could have gotten a direct recovery under the ALI rule. That's exactly the problem with McGuire-Wood. The first district in Small versus Sussman addressed this very point, what the court there said correctly was, it wouldn't be particularly necessary or wise to follow the American Law Institute approach, since we here in Illinois have a statute. And the Seventh Circuit in the Pandasham case, which is obviously persuasive, has a helpful discussion, I think, about what the state of the law is and the fact that the ALI rule, 7.01d, is a minority position. It's been adopted by a couple of states. This state is not one of them. Counsel, how do you characterize the concept in Brown? That's what I heard Mr. Cummins argue, that there's sort of a parallel concept. I don't believe that there is a parallel concept at all, Your Honor. And here's why. So Brown versus DeYoung is a case in which individual shareholders sued the majority shareholders in the company. So that's not a derivative action. A derivative action is nominal shareholders bringing an action on behalf of the company to recover the company. Brown is a case where the shareholders sued the company and where the court, in its opinion, said that the company disclaimed any right to the proceeds, any right to the recoveries. So the corporation itself insists that in equity, it is not entitled to the monies. That's a very different situation from the situation in this case. Now, what counsel characterized is the concept of DeYoung. So it's not only DeYoung. It's really in 7.01d, and it's this concept that in equity, a court can, in a derivative action, under certain circumstances, provided a list of four different criteria are met, including no multiplicity of litigation, no possibility of prejudice and creditors, and showing that the shareholders themselves are the only ones that are really stakeholders in the action. Under those circumstances, a court in equity can decide to give an award on derivative claims, not to the company but to the shareholders directly. That's the concept. And I would submit that that is not the law, that the legislature could have adopted that position in the LLC Act. It had been around 20 years since the LLC Act was passed. They didn't. And that's not consistent with what Small Works Assessment says. It's not consistent with the statute. And there are good reasons for it. I mean, there's really good reasons for it, and the good reasons for it are that corporations exist to protect the shareholders from the company liabilities. What goes along with that, though, is that the shareholders can't have access to the company's assets. And that's what these companies are trying to do here. If you follow the concept of the Spiker statute, what you're authorizing is shareholders in bifurcated ways, one action at a time, this action, the John King action, you're authorizing them to directly grab the company's assets when they are at no risk of the company's liabilities. That's why 701B is a minority rule. It's not the law in Illinois. Counsel, how do you address Mr. Cummings' argument with respect to standing that at the time of the malpractice, the plaintiff did have an ownership interest, and that's the date that should be operative rather than now? Justice Thomas, that is not the law. The law is very clear. It's a small group of suspects. The relevant question, the statute says, you have to be a shareholder on the date you bring the claim. So by selling their shares after the cause of action arose, but before they brought this claim against McGuire, by doing so they relinquished the right or the ability to bring a derivative claim. And that makes sense because if this was such a good claim, if everybody knew McGuire Woods was liable for losing these claims, and by the way, obviously you can dispute all of that, but if that were the case, even on their theory, right, that would be reflected in the share price. The share price takes account of that. So by relinquishing their claim, by selling their claim, by cashing out their interest in this company, they gave up the right to bring a derivative claim. So the relevant point in time is the point in time at which the lawsuit is filed, and that's the holding of small versus suspect. Small says there is nothing unjust about preserving the direct versus derivative distinction where someone has sold their shares. And it's for the reason I just gave. When you sell your shares, you realize whatever inherent value exists in the stock to pursue a derivative claim, and you give up the right to bring such a claim because you're no longer a shareholder. So for all those reasons, members of the court, unless there are other questions, we would respectfully ask that the court reverse the decision of the appellate court and affirm the circuit court's entry of summary judgment on McGuire-Woods. Thank you. Case number 118652, James R. Stevens et al. versus McGuire-Woods, LLP, will be taken under advisement as agenda number 24. Mr. Giles and Mr. Cummings, we thank you for your arguments this morning, and you are excused at this time.